**LANDON et al. v. COURT OF INDUSTRIAL RELATIONS OF STATE OF KANSAS et al.**

(District Court, D. Kansas, First Division. August 7, 1920.)

No. 136–N.

1. **Gas ⊜⟶14(1)—Plaintiffs in other suits held not necessary parties to suit to restrain enforcement of rates.**

In a suit against a state Court of Industrial Relations to enjoin the enforcement of rates fixed for gas companies, plaintiffs, in other suits against one of the gas companies to have legal and reasonable rates fixed, who do not ask leave to intervene in the suit at bar, are not necessary parties to the latter suit, and a motion to make them parties defendant therein will be denied.

2. **Appeal and error ⊜⟶1212(3)—Decision of Supreme Court held to require determination of controversy between defendants.**

In a suit by a gas supply company against a state Court of Industrial Relations and numerous distributing companies and municipalities, to restrain the enforcement of a rate fixed for the distributing companies, of which the supply company had received a proportion, the decision of the Supreme Court on a former appeal, which, though determining that the supply company was not interested in the rate attacked, remanded the case to the trial court to determine all the issues involved, including those arising on the several bills and cross-bills, and answers in the nature of cross-bills, requires the trial court to determine the validity of that rate as affecting the defendant distributing companies.

3. **Public service commissions ⊜⟶21—Provisions for attacking order within 30 days not a limitation.**

The provision of Laws Kan. 1911, c. 238, § 21, for affirmative action to question an order of the Public Utilities Commission, applicable to the Court of Industrial Relations, within 30 days after the entry of such

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

order, is not a statute of limitations, which bars the suit attacking the order after the expiration of that period.

**4. Equity ⊚═87(1)—Equity can restrain confiscatory rate after statutory period of limitations.**

A court of equity may entertain a suit to restrain the enforcement of a confiscatory rate established by a state Public Service Commission, even after the expiration of the period of limitations fixed by the statute for suits attacking the order.

**5. Gas ⊚═14(1)—Presumption in favor of orders lessened by irregularities at hearing.**

The presumption in favor of the validity of an order of the state Court of Industrial Relations fixing a rate for natural gas is greatly lessened, if not entirely removed, by a showing that it was not based upon evidence as to the plant values of the distributing companies or their operating expenses, and that some of them were given no notice of the proceedings.

**6. Gas ⊚═14(1)—Reasonableness of proportion paid to supply company material in determining reasonableness of rates.**

At a hearing to determine the reasonableness of rates fixed for gas distributing companies, a portion of which was paid to the supply company, the question whether the portion paid to supply company was reasonable for its services is material, even though the supply company was not bound by the established rate, since it is essential, in determining whether the rate was reasonable, for the distributing companies to determine whether the payments by them to the supply company were reasonable or should be reduced.

**7. Gas ⊚═14(1)—Rates fixed by Court of Industrial Relations for distributing companies held confiscatory.**

Evidence that under the 28-cent rate allowed by the Kansas Court of Industrial Relations, under Laws Kan. 1911, c. 238, § 30, for the sale of natural gas by distributing companies, those companies were unable to earn in any case more than enough to meet operating expenses, cost of gas, and depreciation, and in some cases could not meet those expenses, *held* to show that the rate was unreasonable, unjust, and confiscatory, and violated the United States Constitution.

Suit by John M. Landon and another, as receivers of the Kansas Natural Gas Company, against the Court of Industrial Relations of the State of Kansas and others. On second hearing on the issue whether the 28-cent rate fixed by the Court of Industrial Relations for the gas distributing companies was reasonable. Rate held confiscatory and unreasonable.

See, also, 245 Fed. 950; 269 Fed. 423.

Chester I. Long, of Wichita, Kan., John H. Atwood, of Kansas City, Mo., and Robert Stone, of Topeka, Kan., for John M. Landon, receiver.

T. S. Salathiel, of Independence, Kan., and Robert A. Brown, of St. Joseph, Mo., for Kansas Natural Gas Co.

John J. Jones, of Wichita, Kan., for George F. Sharitt, receiver.

Charles Blood Smith, of Topeka, Kan., for Fidelity Title & Trust Co.

Fred S. Jackson, of Topeka, Kan., for Public Utilities Commission of Kansas and its members.

J. W. Dana, of Kansas City, Mo., for Kansas City Gas Co., Wyandotte County Gas Co., and Citizens' Light, Heat & Power Co. of Lawrence.

James D. Lindsay, of Jefferson City, Mo., for Public Service Commission of Missouri.

---

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. A. Loomis, of Kansas City, Mo., for Jackson County Gas Co., Gardner Gas Co., Edgerton Gas Co., Wellsville Gas Co., Anderson County Light & Heat Co., Richmond & Princeton Gas Co., Baldwin Gas Co., Kansas Farmers' Gas Co., Ottawa Gas & Electric Co., Western Gas & Light Co., Wier Gas Co., and Parsons Gas Co.

T. F. Doran, of Topeka, Kan., for L. G. Treleaven, receiver.

Edward Sapp, of Galena, Kan., for Macon Gas Co.

W. E. Brown, of Atchison, Kan., for Atchison Ry., Light & Power Co.

Floyd Harper, of Leavenworth, Kan., for Leavenworth Light, Heat & Power Co.

H. J. Smith, of Kansas City, Kan., for Kansas City, Kan.

R. B. Caldwell, of Kansas City, Mo., for Kansas Gas & Light Co. and Home Light & Power Co.

E. W. Clausen, of Atchison, Kan., for city of Atchison.

B. F. Bowers, of Ottawa, Kan., for city of Ottawa.

L. V. Stigall and Charles L. Crowley, both of St. Joseph, Mo., for city of St. Joseph.

M. A. Fyke, of Kansas City, Mo., for Kansas City, Mo.

W. E. Ziegler, of Coffeyville, Kan., for Coffeyville Gas & Fuel Co.

H. H. Diechler, of Coffeyville, Kan., for city of Coffeyville.

T. M. Vrady, of Parsons, Kan., for city of Parsons.

George P. Hayden and H. O. Corwine, both of Topeka, Kan., for city of Topeka.

F. S. Jackson, of Topeka, Kan., for all Kansas cities not otherwise represented.

BOOTH, District Judge. Following the decision of the Supreme Court in said above-entitled cause (249 U. S. 236, 591, 39 Sup. Ct. 268, 389, 63 L. Ed. 791, 577), and the filing of mandates, June 6, 1919, and pursuant thereto, the court allowed amended and supplemental pleadings to be filed, with the view of framing more clearly from the standpoint of the distributing companies the issue whether the 28-cent rate order made by the Public Utilities Commission of Kansas, December 10, 1915, was confiscatory of the property of the distributing companies, as well as noncompensatory to the receiver. The issues in the cause as to the old supply contracts, their validity, present status and effect as to the receiver, and as to the Kansas Natural Gas Company, remain in the case.

Amended and supplemental pleadings have been filed by the receiver, the Kansas Natural Gas Company, Fidelity Title & Trust Company, the Public Utilities Commission of Kansas (now the Court of Industrial Relations, which latter name will be used henceforth), the Public Service Commission of Missouri, upwards of 20 distributing companies, and several cities, all having been parties to the cause at the time of the former trial. At the request of counsel, and for the greater convenience in handling the case, the issues as to the supply contracts and related matters have been segregated and reserved for future hearing; the present hearing being confined to the issues in reference to the 28-cent rate order of December 10, 1915, and related issues.

Before taking up the pleadings and evidence on these latter issues, it is proper to notice and dispose of certain preliminary applications and motions:

[1] 1. Motion by the Kansas City Gas Company and the receivers of the Kansas Natural Gas Company to bring in as additional parties defendant certain parties who have brought suits in their own individual behalf against the Kansas City Gas Company, claiming that that company has at certain specified times charged more than a legal and more than a reasonable price for gas, and praying for the fixing of legal and reasonable rates, for an accounting in reference to excessive charges, and for an injunction against charging excessive rates: These various plaintiffs do not ask leave to intervene in the present suit, and in my judgment they are not necessary parties to the present suit, 136–N. Furthermore, their interest as consumers of gas is in my judgment represented either by the city of Kansas City or by the Public Service Commission of Missouri. Accordingly the motion to make them parties defendant is denied.

2. Motion on behalf of the city of Kansas City to dismiss this suit as to it: This motion is based upon several alleged grounds: (a) That the plaintiff's complaint in making Kansas City a party defendant proceeded upon the theory that the business of the receiver was interstate commerce, and that the interstate movement of gas continued up to the consumer's burners; that inasmuch as the Supreme Court has negatived this theory there is no longer any reason for retaining Kansas City as a party defendant. (b) That the original preliminary injunction, though still in force, was not operative against Kansas City, and it therefore furnishes no basis for retaining Kansas City as a party defendant. (c) That the cross-bills and answers on which the case is to be retried do not involve Kansas City, and that there are no issues in the case in which it is concerned. This motion to dismiss was interposed prior to the completion of the amended and supplemental pleadings, and consideration of the motion has been postponed until said pleadings were completed.

Without discussing in detail the several grounds of the motion, it is sufficient to say that an examination of the pleadings as now made up has led me to the conclusion that there are certain questions involved in the issues, and especially in connection with the rights of Kansas City under the original ordinance and supply contract of November-December, 1906, which render Kansas City a proper, if not an indispensable, party to the present suit. The motion to dismiss is therefore denied.

3. The question whether the distributing companies can properly maintain in the present suit the inquiry whether the 28-cent rate order was confiscatory is raised by the Court of Industrial Relations. It is contended that the issues raised by answers and cross-bills of the distributing companies are new controversies between them and their codefendant, the Court of Industrial Relations, and that such new controversies are not of such character as can properly be tried and determined in the present suit. It is further claimed that said distributing companies cannot maintain such inquiries in the present suit, because no affirmative action was taken by them to question the order of

December 10, 1915, within 30 days thereafter, as provided by section 21, chapter 238, Session Laws of Kansas 1911. Dismissal of the several cross-bills is prayed.

[2] In my judgment this question of proper procedure is no longer open for discussion. The Supreme Court, by its decree in this cause on April 28, 1919, ordered as follows:

"The decrees below are reversed, and the cause is remanded to the trial court, to hear it anew and determine all the issues involved, including those arising on the several bills, cross-bills, and answers in the nature of cross-bills, in conformity with the views expressed in the opinion of this court, and to take such further proceedings as may be appropriate and consistent with such opinion. All temporary injunctions in force at the time of the entry of the decrees from which appeals were taken shall be continued in force until otherwise ordered."

These directions were not a mere routine formula; they were specially framed to meet the situation after the original opinion had been handed down. Formal petitions were presented to the Supreme Court, wherein the facts of the situation were fully and clearly set forth, among them that the distributing companies were all in court in the present suit; that they were vitally interested in the 28-cent schedule; that their contentions were, and had been on the trial, that said schedule was confiscatory as to their property; that at least one of the distributing companies had upon the trial filed its answer in the nature of a cross-bill against the Public Utilities Commission of Kansas, alleging the invalidity and confiscatory character of the 28-cent rate order, and demanding relief against the Public Utilities Commission; that inasmuch as the Supreme Court had now held that the receivers of the Kansas Natural Gas Company were not in position to complain of the 28-cent schedule, the other distributing companies desired to interpose similar pleadings, and to try out the issue of the confiscatory character of the 28-cent rate order on their own behalf.

Any doubts which may have been entertained at one time by this court as to its power to allow a hearing to the distributing companies touching the confiscatory character of the 28-cent rate order, without express permission of the Supreme Court, have been effectually removed by the directions of that court above quoted. Not merely permission has been granted, but explicit directions given to proceed to such hearing. Those directions have become the law of the case. That the conclusion was eminently wise cannot be doubted; and I may add, further, that it would be a reproach to modern equity procedure if such conclusion could not have been reached.

[3, 4] As to the 30-day period provided in the Kansas statute above cited, it is sufficient to say that the provision in question has been held by the Supreme Court of Kansas not to be a statute of limitation. Ætna Ins. Co. v. Lewis, 92 Kan. 1012, 142 Pac. 954. See, also, Emporia Telephone Co. v. Public Utilities Commission, 97 Kan. 139, 154 Pac. 262. And even if said provision were in the nature of a statute of limitation, nevertheless a court of equity might still entertain a suit of this character even after the statutory period. Emporia Case, supra. See, also, Prentiss v. Atlantic Coast Line, 211 U. S. 210, 232, 29 Sup. Ct. 67, 53 L. Ed. 150.

Turning to the merits: It is shown by the evidence that the following distributing companies, amongst others, were supplied with gas by the receiver of the Kansas Natural Gas Company at the time of the making of the 28-cent rate order, and thereafter while such schedule was in force, and the facts established by the evidence in relation to said distributing companies and their experience under the 28-cent schedule were as follows:

The Consumers' Light, Heat & Power Company, under Treleaven, as receiver, was operating in Topeka, Kan., with approximately 110 miles of mains, 11,000 meters, and a plant valued at in round numbers $1,700,000. The assessed valuation of the plant for taxation purposes for 1916 was $1,370,000.

Total receipts from January to September, 1916, under the 28-cent
  rate ............................................................... $190,968.00
Paid receiver of Kansas Natural Gas Company for gas............ 124,076.00
                                                              ———————
  Balance ........................................................$ 66,892.00
Operating expenses .................................$34,935.00
Depreciation ......................................... 15,000.00
Taxes and insurance ............................... 20,563.00
                                             ———————
    Total ...................................................$70,498.00

Leaving a deficit, without providing any sum for interest or dividends.

The Atchison Railway, Light & Power Company, operating in Atchison, with 2,400 meters and a valuation of in round numbers of $379,000, received an—

Income from the sale of gas, from January to September, 1916.....$ 46,721.00
Paid receiver for gas ........................................... 31,151.00
                                               ———————
  Balance ........................................................$ 15,570.00
Operating expenses .................................$9,075.00
Taxes .................................................. 1,932.00
Depreciation ......................................... 4,454.00
                                           ———————
    Total ...................................................$ 15,461.00
                                           ———————
Leaving a net of .................................................$ 109.00

—with which to pay interest and dividends.

The Wyandotte County Gas Company, operating in Kansas City, Kan., with 188 miles of mains, approximately 17,000 meters, having a plant valuation of approximately $1,900,000, had a—

Gross income during the year 1916 (the whole year being placed
  upon a 28-cent rate calculation) ...............................$402,635.00
Paid the receiver of the Kansas Natural Gas Company for gas..... 251,647.00
                                             ———————
  Balance ........................................................$150,988.00
Operating expenses .................................$79,212.00
Taxes .................................................. 36,469.00
                                           ———————
    Total ...................................................$115,681.00
                                         ———————
    Balance ..................................................$ 35,307.00

If from this is taken depreciation of 2 per cent. on depreciable property, amounting to $35,000, balance would be $307, with which to pay interest and dividends.

The Citizens' Light, Heat & Power Company, operating in Lawrence, Kan., with 57 miles of mains, 3,400 meters, and a plant valuation of $300,000 to $350,000—

Received during the year 1916 (the whole year being reduced to
  28-cent basis) .................................................$133,095.00
Paid the receiver of the Kansas Natural Gas Company............ 88,730.00

    Balance ....................................................$ 44,365.00
Operating expenses ..................................$11,671.00
Taxes ..............................................  2,122.00
Payment to city of 2 per cent.......................  2,661.00

    Total ......................................................$16,454.00

                                                         $ 27,911.00
Depreciation reserve ........................................$  9,353.00

Leaving a net balance of approximately $18,500, which would be equivalent to a return on the valuation of approximately 5.3 per cent.

Leavenworth Light, Heat & Power Company, of Leavenworth, Kan., having a plant valuation in round numbers of $300,000, and 3,200 consumers, had a net income for the year 1916 (computing the whole year on the 28-cent basis) of $15,600, with nothing deducted for depreciation and renewal.

The 28-cent rate order was, of course, not binding upon the distributing companies of Missouri, those companies being under the jurisdiction of the Public Service Commission of Missouri. At the time of the entry of the 28-cent order by the Public Utilities Commission of Kansas, certain of the distributing companies of Missouri were operating under rates fixed by city ordinances. This was notably the case in Kansas City, Mo. The experience of the Kansas City Gas Company, with a rate for gas not far from 28 cents during 1916 and with subsequent rates during the succeeding years, is of great probative value. The average rate under the ordinance of Kansas City, Mo., for 1916, was 27½ cents; from January to September, 1917, 30 cents. On July 31, 1917, this court entered an order, known as the 60-cent rate order, which became effective from and after the meter readings made September 1–10, 1917. This 60-cent schedule remained in force until the order of this court known as the 80-cent rate order, entered November 13, 1918, and going into effect from and after meter readings made about November 20, 1918. These 60-cent and 80-cent schedules, with the orders of the court, were filed by the Kansas City Gas Company with the Public Service Commission of Missouri in substantial compliance with the Missouri statute providing for the filing of the schedule of rates by public utilities with said commission. Those schedules became effective over the whole system, whether in Kansas or Missouri. The results of operations in Kansas City, Mo., under the several rates, are shown in the following table:

Exhibit No. 514.

## Kansas City Gas Company Revenues.

| | 1916 | 1917 | 1918 | 1919 |
|---|---|---|---|---|
| Revenues: | | | | |
| Sale of gas with penalties and minimum bills...... | $1,487,331.64 | $1,380,625.44 | $1,756,313.20 | $2,622,680.28 |
| Operating expenses: | | | | |
| Payments to the receiver...... | $927,409.91 | $808,955.04 | $997,974.05 | $1,194,388.14 |
| Other operating expenses...... | 368,588.01 | 489,061.19 | 485,988.18 | 664,958.44 |
| Taxes...... | 124,636.55 | 123,109.22 | 141,040.26, | 177,526.07 |
| | $1,420,624.47 | $1,371,125.46 | $1,625,002.49 | $2,036,872.65 |
| Net profit on operating without depreciation reserve...... | $ 66,697.17 | (red) $ 40,500.01 | $ 131,310.71 | $ 585,807.63 |
| Nonoperating revenues...... | 78,100.42 | 69,899.87 | 65,350.07 | 85,485.83 |
| | $ 144,797.59 | $ 29,399.85 | $ 196,660.07 | $ 671,293.46 |
| Depreciation reserve—2 per cent. on depreciable property...... | $ 130,000.00 | $ 130,000.00 | $ 130,000.00 | $ 130,000.00 |
| Left for interest and profits...... | $ 14,797.59 | (red) $ 100,600.14 | $ 66,660.78 | $ 541,293.46 |
| Eight per cent. on $9,556,500 (value of property)...... | 764,520.00 | 764,520.00 | 764,520.00 | 764,520.00 |
| Deficit...... | (red) $ 749,722.41 | (red) $ 865,120.11 | (red) $ 697,859.22 | $ 133,226.54 |

Gas was sold in 1916 at 27c until November 19, when rate was made 30c; average price was 27.5c for year.

Gas was sold in 1917 at 30c per M. from January to September meter readings, then balance of year 60c. Average price for year was 37.51c per M.

Gas was sold in 1918 for 60c, paying receiver 57½ per cent. of receipts up to middle of December, then 80c rate went into effect, receiver getting 40 per cent. of receipts.

Gas sold all year in 1919 at 80c per M. 40 per cent. paid to receiver until August 25: after that 28c at city gates according to accounts. Actual payments, however, have been made on 40 per cent. basis, so that on a 40 per cent. basis there was $812,477.48 left for depreciation, interest and profits, compared with $671,-293.46, or $141,184.02 more than shown above, leaving a deficit of $42,042.52.

It is plainly apparent that the old ordinance rates in Kansas City were noncompensatory, and that the rates charged under the orders of this court were not excessive or unreasonable, and were not even sufficient to pay a fair rate of return upon the full value of the property in public service. The evidence also shows that the other distributing companies above mentioned experienced similar results under the rates authorized by the court. The distributing companies above mentioned during 1916 distributed more than 60 per cent. of the total gas furnished for domestic use by the receiver of the Kansas Natural Gas Company to all consumers.

It is not necessary to review in detail the results of the operations by the other distributing companies under the 28-cent schedule and subsequent schedules authorized by the court. The evidence has, however, been examined and considered, and as to all of them, with few exceptions, it leads to the same conclusions. Evidence was introduced at the hearing on behalf of the following distributing companies: The Ft. Scott & Nevada Light, Heat, Water & Power Company; Parsons Gas Company; Home Light, Heat & Power Company and Kansas Gas & Electric Company, operating in Pittsburg, Kan.; Johnson County Gas Company; Gardner Gas Company; Edgerton Gas Company; Wellsville Gas Company; Anderson County Light & Heat Company; Richmond & Princeton Gas Company; Baldwin Gas Company; Kansas Farmers' Gas Company; Ottawa Gas & Electric Company; Weir Gas Company; Tonganoxie Gas & Electric Company; American Gas Company, operating in the cities of Galena, Oswego, Altamont, Scammon, Cherokee, and Empire City, Kan.; St. Joseph Gas Company; Joplin Gas Company; Oronogo Gas Company; Carl Junction Gas Company; Weston Gas & Light Company. The distributing companies not offering evidence represented less than 8 per cent. of the meters in service in 1916.

Evidence on the part of the distributing companies touching going value and certain other material elements has been largely omitted, for the reason that the inquiry upon this trial has not been what was a reasonable and compensatory rate for the distributing companies at the time of the making of the order of December 10, 1915, but the inquiry has been whether the 28-cent schedule was confiscatory as to the distributing companies, and those companies have been content to rest their case with respect to that issue upon showing which would have been even stronger, had the omitted elements been included.

[5] Another ground of attack upon the 28-cent rate order alleged and insisted upon by many of the distributing companies is that, while the application by the receiver to the Public Utilities Commission of Kansas, in 1915, for higher rates, has been held by the Supreme Court to have been a petition "to permit higher charges to customers by local companies," and while the rates under the order of the commission of December 10, 1915, were "rates prescribed for the latter" (local companies), yet the order in question was not based upon any evidence as to the plant values of the distributing companies or the operating expenses or the cost to them of the distribution of the gas. Further-

more, that in case of some of the distributing companies no notice of the proceedings before the Public Utilities Commission was given them, that they did not appear in said proceedings, that they were not present at the hearings. The evidence supports many of these contentions, and especially those relating to the absence of evidence before the Public Utilities Commission as to the plant values of the distributing companies and their operating expenses. Whether this state of affairs rendered the order of December 10, 1915, absolutely void as to the distributing companies, may be open to question; but at least the presumption of reasonableness and of compensatory character which ordinarily attends such a rate order was, under the circumstances above mentioned, greatly lessened in force, if not entirely removed. It is but fair to add, however, that on the theory then adopted by the Public Utilities Commission and by most of the participants in the hearings which led up to the 28-cent rate order, the above described evidence as to the distributing companies was not of vital importance.

Several further questions raised by some of the distributing companies as to the validity of the order of December 10, 1915, are disposed of by the case of Public Utilities Commission of Kansas v. Wichita Railroad & Light Company, 268 Fed. 37, decided by the Circuit Court of Appeals of this circuit July 15, 1920.

[6] Upon the hearing at the retrial of this cause the receiver has introduced, in addition to his other evidence on the issues involved, substantially all the evidence introduced by him upon the former hearing as to the noncompensatory character of the 28-cent schedule. Objection has been raised to this latter class of evidence on the ground that the Supreme Court has decided that the receiver had no such interest in the 28-cent schedule as to enable him to maintain a suit to have that schedule adjudged confiscatory as to him. The evidence has been received, however, because in my judgment such evidence has a direct probative value in determining the issue whether the 28-cent schedule was confiscatory as to the distributing companies. Under the practice in vogue two-thirds of the collections under the 28-cent rate went to the receiver and one-third to the distributing companies. In determining whether the rates prescribed for the latter were confiscatory, it is of importance to know whether the price these distributing companies paid for the gas which they distributed was or was not unreasonably high. Upon this latter inquiry the evidence offered by the receiver is admissible and of vital importance, unless admission be made by the Court of Industrial Relations that the moneys paid by the distributing companies to the receiver of the Kansas Natural Gas Company were reasonable items in the operating expenses of the distributing companies. Such admission has not been made upon the record, and the evidence therefore offered by the receiver has been considered. From such evidence it clearly appears that the amounts paid by the various distributing companies to the receiver (being the proportion of the 28-cent rate which it was assumed by the Public Utilities Commission would be paid to the receiver) were

noncompensatory to the receiver, and that there was no reasonable expectation or possibility that the distributing companies could obtain a reduction of said proportion of the 28-cent rate so paid to the receiver.

Upon the former trial, when it was assumed that the 28-cent schedule was prescribed for and intended to be binding upon the receiver of the Kansas Natural Gas Company, findings in detail were made to the effect that the 28-cent schedule was confiscatory of the property and business under the care of said receiver.  Upon the present trial, in the light of the decision of the Supreme Court, such findings are neither necessary nor proper; but it is found that though the 28-cent rate schedule was not prescribed for the receiver, and was not binding upon him, yet that such schedule was put into effect by the receiver and the distributing companies with the same division of proceeds, and that said schedule was noncompensatory to the receiver.  This conclusion is demonstrated by tabulated evidence, offered upon the former trial and again upon the present trial, showing the actual experience of the receiver during the period when the 28-cent schedule was in operation.

After a careful consideration of all the evidence, I have reached the following conclusions:

[7] That the rates in force on January 1, 1911, under section 30, chapter 238, Laws of Kansas 1911, for the sale of natural gas by the defendant distributing companies to consumers in Kansas, were on December 10, 1915, and still are, noncompensatory, unreasonably low, confiscatory, and violative of the Constitution of the United States.

That the proportional part of said rates being paid by said distributing companies to the receiver of the Kansas Natural Gas Company on January 1, 1911, and subsequent thereto, was noncompensatory to the receiver, and did not furnish the said receiver a fair and reasonable return upon the property in his charge used and useful in furnishing said gas to said distributing companies.

That the order of December 10, 1915, of the Public Utilities Commission of Kansas prescribing rates for the sale of natural gas by the defendant distributing companies to consumers of gas in Kansas, known as the 28-cent rate order, and the rates thereunder, were on said date, and still are, as to said distributing companies, noncompensatory, unreasonably low, confiscatory, and violative of the Constitution of the United States.

That the proportional part of the rates prescribed by the 28-cent rate order which was paid by said distributing companies to the receiver of the Kansas Natural Gas Company during the time said rate schedule was in force was noncompensatory to the receiver, and did not furnish the said receiver a fair and reasonable return upon the property in his charge and used and useful in furnishing said gas to said distributing companies.

That the rates authorized under the 60-cent rate order of this court, and adopted under injunctive compulsion of this court by the distributing companies in Kansas and Missouri, as well as the rates which the

60-cent rate order superseded (some fixed by ordinance and some by order of the state court of Montgomery county, Kan.), and the rates authorized under the 80-cent rate order of this court, superseding the 60-cent schedule, were all of them noncompensatory, both to the receiver and to the several distributing companies, both in Kansas and Missouri; no one of said rates affording a fair return upon the property used and useful in furnishing and distributing said gas.

That the preliminary injunction which issued out of this court heretofore and on the 1st day of August, 1916, restraining and enjoining the Public Utilities Commission of Kansas and its members and its attorney, and the Attorney General of the state of Kansas, from enforcing the statutory rates provided by section 30, chapter 238, Laws of Kansas 1911, and from enforcing the rates provided by the order of the Public Utilities Commission of Kansas of December 10, 1915, known as the 28-cent rate order, and from enforcing any of the penal provisions of the laws of Kansas for failure to maintain in effect such rates, or any of them, was properly, legally, and providently issued.

Since this suit was commenced and the preliminary injunction issued, there have been many developments bearing upon the issues involved. Errors of this court upon the former trial have been corrected upon appeal; the relationship of the various parties to the suit, the extent and limitations of their rights and powers, have been more accurately defined; above all else, changes in economic conditions surrounding the production and distribution of natural gas have caused changes in the attitude of the various parties toward each other, respectively, as to many of the issues in the cause. The receiver is no longer contending that he is conducting an interstate commerce business which extends to the burner tips of the consumers. The Court of Industrial Relations of Kansas is not contending that the 28-cent schedule under the order of December 10, 1915, is reasonable and compensatory under present conditions, nor is it threatening to enforce the same, or penalties under the statute law of Kansas for nonobservance.

The Public Service Commission of Missouri is not interfering or threatening to interfere with the receiver in fixing fair rates at the gates of the Missouri cities for gas sold to the distributing companies, nor is it threatening to enforce the old ordinance or franchise rates in said cities. Some of the distributing companies and some of the cities, defendants in this cause, both in Missouri and in Kansas, are abandoning the old supply contracts and the ordinance franchise contracts, either expressly or by tacit implication. While the case has not become moot, and while the issues whether the 28-cent schedule of December 10, 1915, was confiscatory as to the distributing companies, and whether the preliminary injunction was improvidently issued, are, for obvious reasons, still of vital importance, yet under present circumstances it is questionable whether it is necessary or advisable to decree a permanent injunction in the cause in favor of any of the parties to the suit as against any other party.

The form of the decree will, however, not be determined until

the remaining issues are disposed of. Meanwhile the court will retain jurisdiction of the parties and the issues, with a view to the entry of such further orders and such final decree as may be found necessary or advisable.