No. 20,111.

THE EMPORIA TELEPHONE COMPANY, *Appellee*, v. THE PUBLIC UTILITIES COMMISSION OF THE STATE OF KANSAS, *Appellant*.

### SYLLABUS BY THE COURT.

1. TELEPHONE RATES—*Not Compensatory—Findings of Court.* Findings of fact made by the district court in an action against the public utilities commission, respecting the cost of service, examined and held to be supported by the evidence.

2. TELEPHONE FRANCHISE — *Charges Payable to City — Not Unreasonable.* Under the statute relating to cities of the second class, providing that the grantee of a franchise shall pay to the city such fixed charge as may be prescribed, a requirement that one hundred dollars a month shall be paid. by a telephone company is not so excessive as to warrant the interference of a court.

3. TELEPHONE RATES—*Courts No Power to Fix Rates.* A court, having no power to fix a rate to be charged by a public utility for services to be rendered in the future, can not accomplish that result indirectly by enjoining interference with a rate which it finds to have been unassailable in the past.

4. TELEPHONE RATES — *Insufficient to Pay Cost of Service — Power of Courts—Injunction.* Where a statute fixes the rate to be charged by a public utility, and forbids its increase except with the consent of the utilities commission, in an action brought to set aside an order of the commission denying an application for an increase the court may, if the existing rate is found to be confiscatory because insufficient to pay the cost of service, adjudge the part of the statute fixing such rate to be inoperative, and enjoin the enforcement of the penalties provided for its violation.

5. TELEPHONE RATES—*When Utility May Establish Its Own Rate.* Where a court having jurisdiction determines that a rate fixed by the statute and approved by the utilities commission is confiscatory, the utility is left free to operate under such rate as it may establish until a new one has been fixed by the commission.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed January 8, 1916. Modified.

*H. O. Caster*, of Oberlin, for the appellant.

*John L. Hunt*, of Topeka, and *H. E. Ganse*, of Emporia, for the appellee.

*J. W. Gleed*, of Topeka, as *amicus curiæ*.

Telephone Co. v. Utilities Commission.

The opinion of the court was delivered by

MASON, J.: The public utilities act provides that whenever any utility desires to make a change in any rate it shall file with the commission a schedule showing the change desired, and that no change shall be made without the consent of the commission (Laws 1911, ch. 238, § 20) ; and also that unless the commission shall otherwise order no utility shall collect a greater compensation than the charge fixed in the lowest schedule of rates for the same services on January 1, 1911 (§ 30). On the date named the Emporia Telephone Company had in force a rate of one dollar a month for four-party selective residence telephones. Later the company filed with the commission an application for permission to change this rate to $1.25 a month. The application was heard in April, 1914, and an order denying it was made on July 2, 1914. On September 9, 1914, the company brought an action asking an injunction against the enforcement of the order, or other interference with the collection of the charge of $1.25. The district court found that the actual cost of the service referred to was $1.25 a month, and that the loss from uncollectible accounts amounted to nearly two cents—in effect making an additional expense of that amount. Judgment was rendered setting aside the order of the board refusing to allow the increase, and enjoining interference with the company in charging and collecting the advanced rate, the injunction to remain in force until the commission should establish a reasonable rate. The commission appeals.

(1) The findings of fact of the trial court are attacked as not justified by the evidence. It is not thought necessary to review the record in detail. We are of the opinion that there was some substantial testimony in support of each finding. If it were necessary to weigh the decision of the district court upon questions of fact against that of the commission with regard to the same facts, considered in the same light, the difficulty of the problem before us would be increased. But the conclusion of the commission was in part based upon two matters involving only questions of law. The commission acted upon the theory, which at the time was regarded as a settled principle of rate making, that the sufficiency of rate

charged by a public utility should be governed by the amount of its total operating revenues and total legitimate expenditures, and that the vital question is not whether the rate on any one given class of service is compensatory. Recent decisions of the federal supreme court, however, have determined that the question whether a rate is to be regarded as compensatory depends upon its relation to the cost of the particular service rendered, and not upon the effect of the entire schedule of which it is a part, as applied to the business as a whole. (*Railroad Co. v. Utilities Commission*, 95 Kan. 604, 148 Pac. 667.) If in any circumstances a non-compensatory rate may be enforced as to a specific service, by reason of some controlling consideration of public policy, the furnishing of a party line telephone is not of such a peculiar character as to place it in the exceptional list.

(2) The commission also was influenced in its decision by the fact that by its franchise or contract with the city the telephone company was required to pay $100 a month to the municipality. This amount the commission regarded as unfair, unreasonable and exorbitant. The statute authorized a requirement that t hecompany should pay some fixed charge to the city (Gen. Stat. 1909; § 1502), and we think the amount named can not be said to be so high as to warrant interference by the courts. The operation of the utility involves some additional responsibility and expense on the part of the municipality, and the determination of the compensation to be exacted must rest largely in the discretion of the officers charged with the administration of its affairs. (*Desser v. City of Wichita*, 96 Kan. 820.) The findings of the trial court will be accepted, and treated as the established facts of the case.

(3) A court has no jurisdiction to fix the rate to be charged by a utility for services to be rendered in the future, that being a legislative and not a judicial function. There is, of course, no dispute about this principle, which the trial court recognized by an explicit statement to that effect in its conclusions of law. The injunction granted against interference with the rate of $1.25, until the establishment of a new rate by the commission, in its practical operation is hardly more than an affirmance of the right of the company to charge that rate at the time of the judgment, inasmuch as the commission is the

Telephone Co. v. Utilities Commission.

body charged with fixing a rate, and no obstacle is interposed to its doing so at any time. But the decree protecting the rate of $1.25 until action by the commission is open to interpretation as the fixing of a rate for the future, and its language should be so modified as to prevent the possibility of such a construction. The considerations that prevent a tribunal from fixing a rate to be charged in the future also forbid its accomplishing the same result by enjoining interference with a rate which it finds to have been unassailable in the past. (*Interstate Com. Commission v. Railway Co.*, 167 U. S. 479, 511.)

(4) But while a court is powerless to fix a rate for the future it is authorized to prevent the enforcement of any order of a board, or of any statute, attempting to establish a non-compensatory rate. The statute gives a right to review the ruling of the commission by a suit to set aside its order on the ground that it is unlawful or unreasonable (Laws 1911, ch. 238, § 21), which must be brought within thirty days (§ 16). This proceeding has much the effect of an appeal, and authorizes a judicial determination of the facts as well as the law. Here an essential inquiry in the matter presented to the court was the question of the cost of the service. The finding that it amounted to $1.25 was a decision that so much of the statute as undertook to limit the charge therefor to $1 was inoperative as to this company because in conflict with the due process of law and the equal protection clauses of the fourteenth amendment. The order of the commission was properly set aside by the court upon this finding, which also justified a decree declaring the provision of the statute fixing the rate at $1 to be inoperative, and enjoining the enforcement by the commission of the penalties for its violation.

"While it is not the province of the courts to enter upon the merely administrative duty of framing a tariff of rates for carriage, it is within the scope of judicial power and a part of judicial duty to restrain anything which, in the form of a regulation of rates, operates to deny to the owners of property invested in the business of transportation that equal protection which is the constitutional right of all owners of other property." (*Reagan v. Farmers' Loan & Trust Co.*, 154 U. S. 362, 399.)

With the modification indicated, the company is entitled to the relief granted. If after a decision by the court that the existing rate is non-compensatory, the utility were required to begin proceedings anew for the allowance of an increase, the old rate to remain in force in the meantime, the commission, while acting in entire good faith, and in accordance with its best judgment, might reach the same conclusion as before. The process might be kept up indefinitely, and there would be no way in which a change in the rate could ever be compelled, or by which the courts could give relief against confiscation. At some stage of the proceedings the plaintiff is entitled to a judicial examination of the question of the adequacy of an established rate. (*Chicago &c. Railway Co. v. Minnesota,* 134 U. S. 418.) The fact having been judicially determined that the $1 rate was non-compensatory, it followed that no legal obligation rested on the company to accept it. The judgment as modified merely declares and protects its right in this regard. Without the injunction the company might have undertaken to charge a compensatory rate, relying upon its ability to defend itself in any proceedings brought against it on that account, by proving anew that the amount named by the statute was confiscatory. But that course would have involved the risk of fines amounting to $1000 a day (Laws 1911, ch. 238), and a proper case was presented for equitable relief. It has been held by the United States circuit court of appeals for this circuit that the federal constitution forbids the enforcement of a non-compensatory rate, even during the process of rate making. (*Love v. Atchison, T. & S. F. Ry. Co.,* 185 Fed. 321.) The legislature may require an application for relief against an existing rate to be made in the first instance to the body charged with the control of that matter. (*Osborne v. San Diego Company,* 178 U. S. 22; *The State, ex rel., v. Postal Telegraph Co.,* 96 Kan. 298, 150 Pac. 544.) As a matter of comity the federal courts will ordinarily refuse to investigate the validity of a rate fixed by a state tribunal until the remedies afforded by the statute are exhausted; but if the time for invoking such a remedy has been allowed to pass this is not a barrier to relief through the courts against confiscatory rates. (*Prentis v. Atlantic Coast Line,* 211 U. S.

210, 232.)   Here the plaintiff has followed to the end the course laid down for it by the statute.

The portion of the judgment setting aside the order of the commission will be affirmed.   The remainder will be modified by eliminating the injunction against the rate of $1.25, and substituting therefor one against the enforcement of the statute fixing the rate at $1—a duty laid upon the commission. (Laws 1911, ch. 238, § 39.)

(5) This leaves the situation much the same as though a new utility had been created since the first of January, 1911. The statute continuing the rate that was then in force could not apply, and the company would necessarily fix its own rate. So when the only rate that has been named is finally determined to be confiscatory the utility must decide for itself, in the first instance, what rate shall be charged.   Where no rate is fixed by the legislature, either directly or through the intervention of a commission, the carrier or utility names a rate, which controls unless it is found by a court to be unreasonable.   (Validity of Rate Regulation, Reeder, p. 55, note 14; 4 R. C. L. 627, note 7.)   "But for this act [creating the interstate commerce commission] it would be unquestioned that the carrier had the right to prescribe its tariff of rates and charges, subject to the limitation that such rates and charges should be reasonable."   (*Interstate Com. Commission v. Railway Co.*, 167 U. S. 479, 504.)   Here there were only two obstacles that prevented the telephone company from establishing a rate for itself.   One was the statute fixing a rate of $1; the other was the order of the commission refusing to authorize a change in this rate—in effect adopting or establishing it.   These having been removed the company was left free to take the initiative.   The modified judgment will leave the telephone company without any rate. It must then fix the rate it will charge.   This rate will be in effect until the public utilities commission fixes a different rate.   The rate fixed by the commission will then be subject to examination by the courts and may be set aside.   This rule will confine the courts to the exercise of their proper functions. It will leave the public utilities commission free to act under the law, and it will prevent the public utility from being compelled to render service at less than a compensatory rate. After the courts have held invalid the act of the legislature and the

order of the public utilities commission establishing a rate, there is no rate, and the utility, upon fixing a rate, can not be convicted of having established or changed the rate without the consent of the commission. No conviction can be had until the legislature or commission establishes another rate and the act of the legislature or order of the public utilities commission has been violated. The public utilities commission is left as free to act in any matter concerning rates as the legislature would be after an act passed by it has been declared invalid. It is under no restriction in that regard. ' If it should name a rate of even a less amount than that previously established, its action would control unless duly set aside by the action of a court.

The judgment is modified as already indicated, and as so modified, affirmed.