No. 23,626.

THE CITY OF HUTCHINSON et al., *Appellees*, v. THE SOUTH-WESTERN BELL TELEPHONE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. FIXED TELEPHONE RATES—*Adjudged to be Void—Right of Telephone Company to Promulgate Rates of Its Own.* Where rates fixed by the utilities commission for the services of a telephone company are adjudged to be confiscatory and are set aside by a court of competent jurisdiction, the telephone company may then promulgate rates of its own which will be deemed to be legal rates under which it may operate until such rates are found to be unreasonable and excessive, or until other rates are fixed by the utilities commission as the statute prescribes, and the rates so promulgated by the telephone company may not be enjoined by the courts until action thereon has been taken by the utilities commission.

2. SAME—*Plaintiff Had Adequate Remedy Before Utilities Commission—Injunction Will Not Lie.* As the parties complaining of the rates promulgated by the telephone company had an adequate remedy upon application to the utilities commission, they may not maintain injunction against the collection of such rates until the utilities commission fixes different rates as the statute provides.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed July 9, 1921. Reversed.

*J. W. Gleed, C. J. Evans, D. E. Palmer,* and *A. M. Harvey,* all of Topeka, for the appellant.

*Eustace Smith,* of Hutchinson, and *W. L. Cunningham,* of Arkansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought in the district court of Reno county by the city of Hutchinson, and L. D. Ferguson, for himself and 3,590 other telephone subscribers of

the city, against the Southwestern Bell Telephone Company to enjoin the enforcement of rates for telephone service which the company had promulgated on its own motion, and which had not been approved by the public utilities commission, on the ground that they were excessive, unreasonable and illegal. Upon a hearing the court found that the rates promulgated by the telephone company were unreasonable and in excess of those prescribed by the court of industrial relations, and its successor, the public utilities commission, and adjudged that the defendant be enjoined from collecting any excess over the rates theretofore allowed by the industrial court and the utilities commission, and from discontinuing the service because of the refusal to pay the proposed rates. From this order the telephone company appeals.

The contention of the telephone company is that the rate formerly prescribed by the industrial court and utilities commission had formerly been the subject of litigation in the district court of Shawnee county, wherein the parties were substantially the same as in this case, and that court had found and adjudged the rates to be unreasonably low, noncompensatory and confiscatory and enjoined their enforcement, and that as there was identity of subject matter and parties, the district court of Reno county was without authority to enjoin the fixing of higher rates than those adjudged to be confiscatory. It appears that an action was brought in the district court of Shawnee county by the telephone company against the court of industrial relations, the attorney of that tribunal, and also the attorney-general of the state, alleging that the rates prescribed in six cities of the state, including the city of Hutchinson, were unreasonably low and confiscatory. It was shown that in the summer of 1920 the telephone company had made application to the court of industrial relations for authority to put into effect increased rates in the six cities and that on March 18, 1921, when the action was brought in the district court of Shawnee county, no order had yet been made. Alleging that the delay was unreasonable, arbitrary, and resulted in the taking of property without due process of law, the action was brought to enjoin the court of industrial relations and officers from enforcing the rate alleged to be confiscatory. The case was heard and on March 26, 1921, that court made findings as

to the amount invested in the telephone business, the cost of maintenance and service, and found that when allowance was made for depreciation, nothing remained as compensation for service or as a return upon the investment. It was found that under the existing rates in the six towns, there was an actual monthly deficit of about $8,000, allowing nothing for return upon the investment or for depreciation, and the court therefore found as to Hutchinson as well as the other cities, that the rates prescribed were confiscatory, and enjoined the enforcement of the same until the public utilities commission should determine what is a just and reasonable rate to be charged for such service, or until the final judgment of the court.

As to the applications made to the court of industrial relations for an increase in rates, it was found that they had been made to the court in three of the cities, including Hutchinson, on July 22, 1920, and in three other of the cities on September 3, 1920. The hearing in the case of the city of Hutchinson was on October 15, 1920, and the latest one of the six cities was Winfield on October 28, 1920. It was also found that the applications for increase as to Hutchinson and several other of the cities had been pending before the court of industrial relations for a period of approximately eight months, and that during that time applications of a like character in a number of cities had been disposed of, some in a few days, some in a month, and that out of fifty-two like applications the average time required for decision was about two months. It was further found that the court had made no request for additional information or evidence, and that a majority of its members regarded the hearings as completed, and had stated to the officers of the company that they had arrived at a decision and were preparing orders with reference to same. The court therefore held that the delay and nonaction on the part of the court of industrial relations were arbitrary, unjust and oppressive, and operated as a denial to plaintiff of a right to a decision within a reasonable time and constituted a confiscation of its property without due process of law. Because of the change in the law transferring the jurisdiction over utilities to the public utilities commission, the court made an order enjoining the enforcement of the confiscatory rate but provided that before promulgating and charging other rates, the telephone company should exe-

cute a bond for $100,000, conditioned that it will pay the subscribers the excess, if any, of the rates which the plaintiff may collect from the subscribers under the protection of the judgment over the rates which shall be finally adjudicated to be just and reasonable by the public utilities commission. To enable the public utilities commission to take action, the court directed that the injunction order be stayed for thirty days from March 26, 1921, but provided in case the commission failed to pass upon the cases within that time or should impose rates that are confiscatory under the evidence then before the court, the temporary injunction should forthwith be binding upon it.

Although the court of industrial relations had jurisdiction and control over the public utilities of the state for a time, the legislature of 1921 created a public utilities commission, and conferred upon it all the powers and duties vested in the court of industrial relations relating to public utilities, and the act became effective on March 15, 1921. (Laws 1921, ch. 260.) When this appeal was submitted no order or decision had been made by the utilities commission upon the pending application of the telephone company to establish reasonable rates, and the appeal must be determined according to the status of the case when the judgment was rendered and the appeal submitted.

The district court of Shawnee county had complete jurisdiction of the parties and of the subject matter and its judgment, finding that the rates formerly prescribed were unreasonable and confiscatory, is binding upon all the parties. No appeal has been taken from that judgment and the sufficiency of the testimony upon which the judgment was based was not open to consideration or review in this action. Notwithstanding that the rates established by the commission had been adjudged to be confiscatory and unconstitutional, and had been enjoined by a court of competent jurisdiction, the district court of Reno county made an order enjoining the telephone company from imposing or collecting any increase of rates beyond the schedule previously allowed by the commission which had been set aside because they were illegal and confiscatory. It must be conceded that that judgment operated to set aside and annul the established rates and after its rendition no established rates were in force. The tele-

phone company then promulgated the rates which it had asked the court of industrial relations to approve, rates which it alleged were reasonable and just. The principal contention of counsel for the plaintiffs is that the new rates promulgated by the telephone company are unreasonable and excessive and that these not having been within the consideration or judgment of the district court of Shawnee county were open to inquiry by the district court of Reno county, and that court having found the company's rates to be unreasonable and excessive had jurisdiction and power to enjoin their enforcement. It certainly had no authority to enjoin the imposition of rates higher than those which had been adjudged to be confiscatory. The telephone company was required to carry on and give service to its subscribers. It was not required to serve the public at rates that were noncompensatory. When the rates fixed by authority of law were set aside it had the right, and indeed it may be said it was its duty, to put in reasonable, compensatory rates and continue the service to the public. Having a legal right to put in a rate, those promulgated must be deemed to be authoritative until they are set aside by proper authority. For the time being these rates are as binding on its subscribers as if they had been allowed by the commission. If parties interested deem them to be unreasonable and excessive, the law affords them a remedy and has provided a tribunal before which questions of that kind are investigated and determined. Upon promulgation of the increased rates any complaining subscriber could have applied to the public utilities commission, the only tribunal which has authority to revise and establish rates, to have the reasonableness of the rates fixed by the company determined. That this was the only proper course was decided in *Telephone Co. v. Utilities Commission,* 97 Kan. 136, 154 Pac. 262, and since the consideration and decision of the question in that case there is little room or necessity for further discussion. It was there held that after a decision adjudging rates to be confiscatory, the utility is not required to continue service under the illegal and unconstitutional rates until the commission has passed on a new application for an increase as "the commission while acting in entire good faith and in accordance with its best judgment might reach the same conclusion as before. The process might be kept up indefinitely and there would be no

way in which a change in the rate could ever be compelled or by which the courts could give relief against confiscation." (p. 140.)   Speaking of the effect of a judgment setting aside rates and of the right of the utility to establish rates for itself, it was said:

"These having been removed the company was left free to take the initiative. The modified judgment will leave the telephone company without any rate. It must then fix the rate it will charge. This rate will be in effect until the public utilities commission fixes a different rate. The rate fixed by the commission will then be subject to examination by the courts and may be set aside. This rule will confine the courts to the exercise of their proper functions. It will leave the public utilities commission free to act under the law, and it will prevent the public utility from being compelled to render service at less than a compensatory rate." (p. 141.)

As there stated, when the company fixes the rates it would charge, these are to be deemed the legal rates and to remain in effect until the commission establishes different rates.  The legislature has vested the commission with authority to fix rates, and within constitutional limitations its power is primary and plenary.  It has full and exclusive power and supervision of all public utilities and upon a hearing may fix rates, fares, charges, rules, regulations, classifications or schedules, and if any are found to be unreasonable, unjust, unfair or in anywise in violation of law, it may change them and substitute others that are determined to be just, reasonable and necessary.  (Gen. Stat. 1915, §§ 8340-8343.)   Under the statutes, the rate-making functions have been committed to the commission and any complaint of existing rates, whether made by the utility or its patrons, as to rates or practices, must be presented to it.   The utility is not required to perform service for less than a fair rate on the facilities employed in serving the public; and on the other hand, the utility cannot demand for the service more than the services rendered are reasonably worth.   The question of the reasonableness of rates is primarily for the commission and the courts are powerless to interfere until action has been taken by the commission.   Other cases bearing upon the subject are *The State, ex rel., v. Gas Co.,* 88 Kan. 165, 127 Pac. 639; *Railroad Co. v. Utilities Commission,* 95 Kan. 604, 148 Pac. 667; *The State, ex rel., v. Postal Telegraph Co.,* 96 Kan. 298, 150 Pac. 544; *City of Scammon v. Gas Co.,* 98 Kan. 812, 160 Pac. 318;

*The State v. Gas Co.,* 102 Kan. 712, 172 Pac. 713; *Telephone Association v. Telephone Co.,* 107 Kan. 169, 190 Pac. 747; *The State, ex rel., v. Railway Co.,* 108 Kan. 847, 851, 197 Pac. 192, 194.

Plaintiffs urge that they should not be required to await the action of the "slow-moving" commission to investigate and revise the rates promulgated by the utility, but should be permitted to go into a court of equity at once and enjoin the collection of a rate deemed to be unreasonable and excessive. However, we have seen that rates promulgated by the utility when established rates are set side, are to be treated as legal rates until otherwise provided by the commission. This conception and rule was announced on January 8, 1916 (*Telephone Co. v. Utilities Commission,* supra), and since that time there have been several sessions of the legislature in which a number of amendments of the utilities act have been made, but the legislature has not seen fit to change the rule or provide that rates promulgated by a utility after a decree annulling commission rates, may be interfered with or enjoined by courts before rates are established by the commission. Since that interpretation was announced it has been uniformly recognized that when rates fixed by the commission are held to be void and there are no existing rates, the utility may fix a rate which will continue in effect until different rates are made and substituted by the commission, and there has likewise been legislative acquiescence in this view. So far as the matter of delay in making application and obtaining a revision of such rates is concerned, it is not necessary that it should be a long one as it may be assumed that the tribunal appointed by law will act with reasonable promptness and dispatch. It has been furnished with engineers, experts and other facilities for expeditious inquiry, and we may assume that the commission will act as expeditiously as the circumstances may require. Doubtless there will be some complaints which will require extended inquiry and considerable time to ascertain what are reasonable and just rates, but ordinarily such cases will be disposed of speedily. If the commission should fail to act on an application of complainants or there should be unreasonable and unnecessary delay the courts are open to them and they could by mandamus compel action by the commission. (*The State, ex rel., v. Postal Telegraph Co.,* supra.) As al-

ready shown, the district court of Shawnee county which entered a judgment annulling the established rates made provision for the protection of the plaintiffs and other patrons of the company by requiring the telephone company to execute a bond in the sum of $100,000 conditioned that it would refund to subscribers any excess of rates collected from them under the protection of the injunction, over the rates determined by the commission to be reasonable and just. This bond has been given and its protection is available to every subscriber in case the rates promulgated by the company are not approved and lower rates are established by the commission. As the law has provided an adequate remedy to plaintiffs by application to the public utilities commission, they were not entitled to maintain this action of injunction, and the judgment entered is therefore reversed with direction to dismiss the action.