No. 27,966.

THE CITY OF HUTCHINSON, *Appellee*, v. THE HUTCHINSON GAS COMPANY, *Appellant.*

(264 Pac. 68.)

SYLLABUS BY THE COURT.

1. GAS—*Rates and Charges—Authority of Company After Prescribed Rates Declared Confiscatory.* Rule followed that where a court having jurisdiction determines that a schedule of rates prescribed by official authority for the services of a utility company is noncompensatory and confiscatory, the utility company may prescribe and collect rates of its own making until new rates have been established by official authority.

2. SAME—*Rates and Charges—Jurisdiction of Courts to Enjoin Noncompensatory or Excessive Rates.* While the courts of this state have no rate-making powers, they may on proper occasion enjoin noncompensatory rates prescribed by the public service commission or other official authority, and may also on proper occasion enjoin excessive rates promulgated by a utility company when its right to make its own rates arises as a consequence of the officially prescribed rates being adjudged invalid.

3. SAME—*Rates and Charges—Enjoining Excessive Rates.* Whenever as a temporary consequence of litigation or adjudication utilities rates prescribed by public authority are held invalid and the utility company is thereby privileged to impose and exact rates of its own making, such self-prescribed rates must be reasonable, and unjust or excessive *ad interim* rates prescribed by the utility company may be enjoined in ancillary proceedings in the court whose prior orders made it possible for the utility company to establish temporary rates of its own making.

4. SAME—*Rates and Charges—Enjoining Excessive Rate—Jurisdiction of Court.* When a gas rate prescribed by the public service commission has been set aside as noncompensatory by a court of competent jurisdiction the utility company may prescribe and collect reasonable rates of its own making until other lawful rates are promulgated by official authority, and the *ad interim* rates prescribed by the utility company cannot be summarily enjoined by another district court in independent proceedings, although by proper ancillary proceedings the court which enjoined the officially prescribed rates as being too low may similarly enjoin the *ad interim* rates prescribed by the utility company if they are shown to be excessively high.

5. COURTS—*Conflicting Jurisdiction—Priority and Retention of Jurisdiction.* Under the circumstances stated in the opinion the *ad interim* gas rates imposed by defendant on its patrons in the city of Hutchinson were not justiciable in the district court of Reno county, and could only be questioned in the court whose prior orders had made it possible for the gas company temporarily to exact rates of its own making.

Courts, 15 C. J. pp. 1134 n. 58, 1138 n. 80. Gas, 28 C. J. pp. 572 n. 25, 578 n. 25, 585 n. 33.

City of Hutchinson v. Hutchinson Gas Co.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed February 11, 1928. Reversed.

*A. C. Malloy, R. C. Davis, Warren H. White,* all of Hutchinson, *F. S. Jackson,* of Topeka, and *Robert D. Garver,* of Kansas City, Mo., for the appellant.

*Max Wyman* and *Walter F. Jones,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   This is an appeal from a judgment of the district court of Reno county, wherein the defendant, the Hutchinson Gas Company, was enjoined from putting into effect a schedule of rates for gas for domestic consumption in Hutchinson pending a final determination of litigation over the gas rates prescribed by the public service commission.

It appears that for some years prior to November 14, 1925, the domestic rate for gas in the city of Hutchinson was 60 cents per thousand cubic feet, plus a service charge of 75 cents. On November 14, 1925, the city of Hutchinson filed a complaint before the public service commission alleging that these gas and service charges exacted from the resident consumers of Hutchinson were "exorbitant, unreasonable, unjust, oppressive, arbitrary, capricious and unnecessary." While that complaint was pending and undetermined, on February 12, 1926, the Hutchinson Gas Company filed with the public service commission a new schedule of gas and service rates for Hutchinson and sought official approval thereof. Pursuant to a hearing on the city's complaint against the existing rates and on the gas company's application for approval of its proposed new schedule of rates, the commission, on April 8, 1926, made an order, to be effective September 1, 1926, prescribing certain graduated rates in Hutchinson and vicinity.

Discontented with this order, the Hutchinson Gas Company instituted an action in the district court of Shawnee county to enjoin its enforcement on the alleged ground that the prescribed rates were noncompensatory and confiscatory. Concurrent therewith were certain other proceedings before the commission concerning the gas rates and service charges in the cities of Newton and Wichita, which likewise culminated in litigation before the district court of Shawnee county. On issues joined involving the gas rates and service charges in all three of these cities, that court appointed a referee, who heard the evidence adduced by the parties and made comprehensive find-

ings of fact and conclusions of law, which with slight changes were adopted by the district court. The rates prescribed by the public service commission were enjoined as confiscatory, as likewise were the prior rates under which the gas company had been operating since August 17, 1920, under a previous order of the commission.

This judgment of the district court of Shawnee county is the subject matter of three appeals to this court, *Hutchinson Gas Co. v. Public Service Commission*, No. 27,945, and two companion cases, Nos. 27,944 and 27,946, which were argued and submitted at our January sitting, at which time also the instant case was presented. It has been necessary to a correct understanding of the present case to include in the foregoing statement a brief survey of this collateral litigation.

After the Shawnee county district court rendered its decision holding invalid the rates prescribed by the public service commission, the Hutchinson Gas Company filed with the commission and promulgated a new schedule of rates, viz.:

"ANNOUNCEMENT.
[Effective July 1, 1927.]

"Pending final determination of present rate litigation the following domestic rates are announced for Wichita, Hutchinson and Newton, and future deliveries will be based thereon:

"20c. per 100 cubic feet for the first 500 cubic feet per month.

"15c. per 100 cubic feet for the next 1,500 cubic feet per month.

"6c. per 100 cubic feet for the next 5,000 cubic feet per month.

"Minimum monthly bill, $1.

"Penalty of 5 per cent added to all bills not paid within 15 days after date of billing.

"This schedule will continue in effect substantially the present cost of house heating, and our gas supply having been increased all customers may avail themselves of the service for the coming winter.

"THE HUTCHINSON GAS COMPANY."

Following this announcement, on July 14, 1927, the city of Hutchinson filed this action in the district court of Reno county to enjoin the Hutchinson Gas Company from putting these self-prescribed rates into effect. The petition briefly narrated the antecedent litigation in the district court of Shawnee county, and alleged that the new rates were "illegal, unauthorized and unlawful," that plaintiff was without an adequate remedy at law, and that—

"Plaintiff alleges that the Hutchinson Gas Company is a public utility operated wholly within the city of Hutchinson, and it is operated principally

for the benefit of said city and its people; and that by reason thereof the City of Hutchinson has exclusive original jurisdiction in the matter of fixing rates to be charged and charges to be demanded, exacted or received by the Hutchinson Gas Company for natural gas furnished to the city of Hutchinson and its people."

Four days later a hearing was had on the city's application for a temporary injunction. The gas company moved to dismiss for want of jurisdiction and because of the pendency in the supreme court of the appeal from the judgment of the district court of Shawnee county. The motion was overruled; evidence was briefly presented on plaintiff's behalf; the trial court found the facts as alleged in plaintiff's petition, and the defendant gas company was restrained from putting the new rates in effect.

Hence this appeal.

Owing to the importance of the subject it seems advisable, even at the risk of repeating what this court has already said, to consider at some length the matters presented in this appeal.

We have set out above a literal quotation from plaintiff's petition in which it is alleged that the defendant gas company is a utility operated wholly within the city of Hutchinson and principally for the benefit of that city and its people, and that—

"The city of Hutchinson has exclusive original jurisdiction in the matter of fixing rates to be charged and charges to be demanded, exacted or received by the Hutchinson Gas Company for natural gas furnished to the city of Hutchinson and its people."

Now, it does not appear that this allegation received any consideration in the trial court; it is not discussed in the briefs of counsel, and it is very doubtful if it has any merit (*City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, syl. ¶ 3, 207 Pac. 813), but it will serve as a starting point for a discussion of the pertinent law of this case.

The public utilities act provides:

". . . The power and authority to control and regulate all public utilities and common carriers situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people shall be vested exclusively in such city, subject only to the right to apply for relief to said public utilities commission as hereinafter provided in section 33 of this act." (Laws 1911, ch. 238, § 3; R. S. 66-104.)

Section 33 of the act, among other matters, provides for a review of public-utility rates and service regulations prescribed by a city government. (R. S. 66-133.)

In *Street Lighting Co. v. Utilities Commission,* 101 Kan. 774, 778, 109 Pac. 205, it was said:

"The cities of this state have always had the power to regulate and control their local public service corporations—assuming that the furnishing of lamp-posts, etc., is a public service. (Gen. Stat. 1868, chapters 18, 19; Gen. Stat. 1915, chapters 17-20.) Cities still have that power except where they have been stripped of it by the public-utilities act. (Laws 1911, ch. 238, § 40, Gen. Stat. 1915, § 8368; *Humphrey v. City of Pratt,* 93 Kan. 413, 418, 144 Pac. 197.) And where the utility service is furnished wholly or principally within one city, the power of control is expressly reserved to the city. (§§ 3 and 33, public-utilities act.) If the local utility company and the city come to loggerheads, then the public utilities commission may take jurisdiction by a proceeding somewhat in the nature of an appeal or right of review. (Laws 1911, ch. 238, § 33, Gen. Stat. 1915, § 8361.)"

It should therefore be perfectly clear that if defendant was a one-city utility whose gas rates and charges were within the primary jurisdiction of the governing body of the city of Hutchinson, the proper course for the city was to have had a proceeding instituted before itself in its governmental capacity and to have given a hearing to all concerned, including the gas company, and then promulgate a schedule of rates to be observed by the gas company. If the gas company felt aggrieved it could invoke its statutory right under sections 3 and 33 of the utilities act (R. S. 66-104, 66-133) and apply to the public service commission for relief; and failing there, it could, of course, invoke whatever judicial redress might be available to it under the guaranty of state and federal constitutions. If the gas company had not invoked a review by the public service commission or had failed before that tribunal, its compliance with the rates imposed by the city could have been enforced by mandamus (*State v. Railway Co.,* 81 Kan. 430, 105 Pac. 704; *State, ex rel., v. Railroad Companies,* 85 Kan. 649, 118 Pac. 872).

But we can hardly fail to note that in the collateral litigation, *The Hutchinson Gas Company v. The Public Service Commission,* now pending before this court, the city of Hutchinson did not attempt to invoke its alleged "exclusive original jurisdiction in the matter of rates to be charged" by the defendant gas company. It began by filing with the public service commission a complaint against the gas company charging that the gas rates were excessive, etc., and praying that the service charge of seventy-five cents per month be abolished or reduced to twenty-five cents, and for an order—

"Reducing the gas charge and rates to be exacted from domestic consumers in a sum not exceeding thirty-five cents per thousand cubic feet for gas metered and sold to such domestic consumers and to this complainant."

It will thus be seen that if the city of Hutchinson had the original jurisdiction over gas rates in that city, it has not exercised that jurisdiction. In this case it merely brushed aside the whole public utilities act and all that had already been undertaken by the public service commission pursuant to a complaint lodged with that tribunal by this plaintiff, as well as all that had been considered and judicially determined by the district court of Shawnee county concerning valuations, income, expense, and the many pertinent and incidental matters which enter into a just and compensatory schedule of gas rates, and sought by ill-advised injunctive interference to prevent this defendant from exercising its constitutional right to name rates of its own making until they are annulled and superseded by other lawful rates prescribed by proper authority. To give judicial sanction to such a maneuver would be a denial of due process of law in its most vexatious form, since the right of a utility company to prescribe and collect proper rates of its own making under such circumstances is thoroughly established.

In *Telephone Co. v. Utilities Commission*, 97 Kan. 136, 154 Pac. 262, it was held:

"Where a court having jurisdiction determines that a rate fixed by the statute and approved by the utilities commission is confiscatory, the utility is left free to operate under such rate as it may establish until a new one has been fixed by the commission." (Syl. ¶ 5.)

In *City of Hutchinson v. Bell Telephone Co.*, 109 Kan. 545, 200 Pac. 301, it was held:

"Where rates fixed by the utilities commission for the services of a telephone company are adjudged to be confiscatory and are set aside by a court of competent jurisdiction, the telephone company may then promulgate rates of its own which will be deemed to be legal rates under which it may operate until such rates are found to be unreasonable and excessive, or until other rates are fixed by the utilities commission as the statute prescribes, and the rates so promulgated by the telephone company may not be enjoined by the courts until action thereon has been taken by the utilities commission." (Syl. ¶ 1.)

In the case just cited this same plaintiff sought by injunctive proceedings to prevent a public utility from exercising its corporate right to prescribe rates for its services when for the time being all the rates prescribed by proper authority had been judicially determined to be noncompensatory. This court said:

"The telephone company was required to carry on and give service to its subscribers. It was not required to serve the public at rates that were non-compensatory. When the rates fixed by authority of law were set aside it had the right, and indeed it may be said it was its duty, to put in reasonable, compensatory rates and continue the service to the public. Having a legal right to put in a rate, those promulgated must be deemed to be authoritative until they are set aside by proper authority. For the time being these rates are as binding on its subscribers as if they had been allowed by the commission. If parties interested deem them to be unreasonable and excessive, the law affords them a remedy and has provided a tribunal before which questions of that kind are investigated and determined. Upon promulgation of the increased rates any complaining subscriber could have applied to the public utilities commission, the only tribunal which has authority to revise and establish rates, to have the reasonableness of the rates fixed by the company determined. That this was the only proper course was decided in *Telephone Co. v. Utilities Commission*, 97 Kan. 136, 154 Pac. 262, and since the consideration and decision of the question in that case there is little room or necessity for further discussion." (p. 549.)

In *State v. Gas Co.*, 102 Kan. 712, 716, 172 Pac. 713, it was said:

"When the federal court enjoined the rates that were in effect on January 1, 1911, and enjoined the rates that the public utilities commission put into effect on December 10, 1915, there were no legal rates that could be collected by the receiver of the Kansas Natural Gas Company. In order to serve the public, the receiver was then compelled to put into effect rates of his own; that he did."

In the still later case of *Gas & Fuel Co. v. Public Utilities Commission*, 116 Kan. 165, 225 Pac. 1036, it was said:

"Ordinarily when a rate is set aside by a competent court the utility is at liberty to promulgate a rate of its own, which should be deemed a legal rate until a different one is authorized and established by the commission. (*City of Hutchinson v. Bell Telephone Co.*, 109 Kan. 545, 200 Pac. 301.) This case is in a somewhat different attitude. The application of the company was for a rate higher than sixty cents. Instead of allowing an increased rate the commission ordered a reduction to fifty cents. The order for a fifty-cent rate has been found to be invalid, and the order being a nullity, it left in force the sixty-cent rate under which the company was operating when the order was made. That was the view taken by this court when the company was restrained during the pendency of the appeal from charging more than the rate authorized by the commission, and which was in force when the invalid order of reduction was made. Whether that rate is too high or too low at the present time is a question for the commission to determine upon application of either party." (p. 174.)

In view of these well-considered precedents, the defendant had a right to publish and promulgate reasonable gas rates and service charges in Hutchinson after the invalidity of the rates of 1920 and

1926 prescribed by the commission was adjudicated. Nor is this right necessarily affected by the fact that the Shawnee county judgment has been appealed to this court. No effort was made to secure from the Shawnee county district court, nor from this court, an order impounding the margin of increase which the defendant proposed to exact during the pendency of the litigation on appeal, nor was a bond demanded of the defendant for the refunding of such margin of increased rates if in the pending appeal it should be determined that the rates prescribed by the public service commission were just and compensatory and that the judgment of the district court to the contrary should be set aside. And yet such orders of impounding and such bonds for refunding challenged exactions by public service companies are not a novelty in this jurisdiction. In *City of Hutchinson v. Bell Telephone Co.*, 109 Kan. 545, 549, 200 Pac. 301, a bond for $100,000 was exacted from the telephone company conditioned that it would refund the excess, if any, over the lawful rates which should finally be adjudicated.

In the recent case of *Ætna Ins. Co. v. Travis*, 124 Kan. 350, 250 Pac. 1060, where the validity of certain insurance rate reductions made by the superintendent of insurance was the subject of litigation, the trial court ordered the difference between the old rates and the new to be impounded pending the determination of the action. On appeal this court continued in effect the impounding order until we disposed of the case; and preliminary to a further appeal to the United States supreme court, a bond was exacted from the insurance companies to secure the return of the excess premiums collected in the event the litigation should be decided adversely to the insurance companies by the court of last resort.

In *State, ex rel., v. Railway Co.*, 87 Kan. 348, 125 Pac. 98, an original action was brought in this court to compel railway companies and certain other corporations to perform certain more or less onerous duties concerning the inspection of grain and to serve as collectors of inspection fees exacted by the state. Pending a determination of the constitutionality of the statute, this court made an order that the fees be collected and the money impounded with the clerk of this court. Eventually defendants prevailed, and the impounded funds were returned to the parties concerned. (See Clerk's App. Docket, M-M. 298, *et seq.*)

Another instructive instance where this procedure was followed

was in *State, ex rel., v. Cumiskey*, 97 Kan. 343, 155 Pac. 47, where resistance was made to certain oil-inspection fees on the ground that they were greatly in excess of the legitimate cost of inspection, thus constituting an unconstitutional tax burden on the oil industry. This court ordered the disputed fees impounded in the hands of the state treasurer as special custodian, on condition that if defendants should prevail in the litigation the fees should be returned to them, and otherwise the money should become treasury funds under the law. (See Clerk's Journal U-U. 570, 571.) The fees were held invalid and the money returned to the parties concerned. (*State, ex rel., v. Cumiskey*, supra, p. 353.)

We mention these precedents because of the discouraging note in appellee's brief in reference to what it conceives to be the impractical state of the law touching the rights of the public where officially prescribed utility rates are adjudged to be invalid. Appellee refers to the long interval before just and proper new rates can be lawfully put into effect, during which time any rates the utility sees fit to impose may be exacted. As to such situation, we can only remark that this court cannot function both as court and counsel. But why should it take "approximately a year" to secure a new hearing and order from the public service commission after its prior order has been held confiscatory or noncompensatory? Why should it take more than half a day? All the facts will have already been ascertained. The data already gathered by the commission and the facts established in court proving the old rates too low will be at hand and an approximately correct rate can be deduced therefrom by a simple mathematical computation. It is practically impossible to prove by figures that a utility rate is unprofitable without also having at hand the data on which a *prima facie* fair rate can likewise be ascertained as well as what would be an excessive rate. And it is because of this obvious fact that by constitutional provision in Virginia and Oklahoma it is provided that whenever a court of competent jurisdiction shall determine that an officially prescribed utility rate is too low, it is the same court's duty to prescribe a reasonable rate from the facts already ascertained in the litigation.

See Virginia Code of 1924, Const. of Va., § 156 (g); Comp. Okla. Stats. Ann. 1921, Const. of Okla., Art. IX, § 23.

Without such constitutional sanction the tying of judicial and legislative power in one branch of government would of course be impossible; and courts in general have scrupulously refrained from

every appearance of exercising rate-making (legislative) power. And yet it is possible that in this commendable policy of keeping strictly within the proper limits of judicial power, the courts have actually leaned backwards. Courts do not hesitate at the instance of a utility company to inquire into the facts which underlie the whole fabric of rate-making and decide on proper occasion that an officially prescribed rate for gas, water, light, etc., is too low, and enjoin its enforcement. Nothing more common. But that is only one side of the shield. Should not such exercise of judicial power on proper occasion be similarly invoked to enjoin utility rates which are unreasonably high? It is the statutory duty of a public utility company to exact no other rates for its services than those which are reasonable and just. The statute reads:

"66-107. Every common carrier and public utility governed by the provisions of this act shall be required to furnish reasonably efficient and sufficient service, joint service and facilities for the use of any and all products or services rendered, furnished, supplied or produced by such public utility or common carrier and to establish just and reasonable rates, joint rates, fares, tolls, charges and exactions and to make just and reasonable rules, classifications and regulations; and every unjust or unreasonable discriminatory or unduly preferential rule or regulation, classification, rate, joint rate, fare, toll or charge demanded, exacted or received is prohibited and hereby declared to be unlawful and void."

"66-139. The commission may compel compliance with the provisions of this act . . . by proceeding in mandamus, injunction or other appropriate civil remedies.

"66-140. The rights and remedies given by this act shall be construed as cumulative of all other laws in force in this state relating to common carriers and public utilities, and shall not repeal any other remedies or rights now existing in this state for the enforcement of the duties and obligations of public utilities."

It is therefore apparent that while the courts of this state have no power to make rates to be observed by public utilities, they do have judicial power not only to protect the utilities from officially imposed confiscatory rates, but likewise to prevent these utility companies from exacting rates which are excessive, under the above-quoted statute and the procedure just cited for its enforcement. In *City of New York v. Bronx Gas & Electric Co.*, 184 N. Y. Sup. 658, this situation was presented. By statute the gas rates in New York City had been fixed at $1 per 1,000 cubic feet to private consumers and at 75 cents per 1,000 cubic feet to the city itself. The gas company brought an action to enjoin the public service commission and other

officials from enforcing those statutory rates on the ground that they were confiscatory. A restraining order was issued *pendente lite* at the behest of the gas company, and for some time thereafter the gas company exacted rates of its own making—$1.50 to private consumers and $1 to the city. There was a good deal of delay before the cause came to trial on its merits, and eventually the company promulgated a new and further advanced schedule of rates—$1.75 per 1,000 cubic feet to all consumers both public and private. Then the city and various consumers brought suit to enjoin the latest proposed rates. On the hearing the court made use of the evidence already in its possession pursuant to which it had issued the restraining order against the statutory rates, as well as other data submitted to it, and held that the latest proposed schedule of rates was unreasonable and excessive. And while acknowledging that rate-making is a legislative and not a judicial function and that the judiciary have no authority to fix rates to be charged by a gas company, nevertheless the court granted the injunction. In *Railroad Co. v. Utilities Commission,* 95 Kan. 604, 615, 148 Pac. 667, it was said:

"It will be noted that the judicial consideration of a freight-rate case shall be tried and determined like a case in equity, and that unreasonable, unjust, oppressive or unlawful rates may be annulled. Without any statute, a Kansas district court, holding as it does almost the full judicial power of the state both at law and in equity, could prevent the imposition of any such improper rates."

And so in this litigious warfare between the Hutchinson Gas Company and its patrons in the matter of rates and service, it seems clear that, without trenching upon nonjudicial power, a court of competent jurisdiction may properly enjoin excessive rates exacted by a utility quite as readily as it enjoins confiscatory rates imposed on the utility by official dictation.

But a clash of judicial authority must be avoided. Generally speaking, it is only through the exercise of its equitable powers that a court takes judicial cognizance of a controversy over utilities rates; and by all the rules of equity procedure, the court which first obtains jurisdiction of the controversy not only retains that jurisdiction until it has determined it, but that court draws to itself all collateral and incidental controversies which if left outside of its judicial control would handicap it in giving full justice and permanent relief to the parties, or permit its final judgment to be frustrated in whole or in part by collateral litigation in another forum. Another highly practical reason for this attitude would be the intol-

erable burden of expense to the litigants, if these rate cases had to be tried *de novo* and *in extenso* before two different courts—one to determine whether the rates were too low, and another to determine whether they were too high. And if two independent courts of equity could pull and haul simultaneously at the complicated accounts of a modern utility corporation, with the protracted unraveling, classifying and dissecting of its receipts and disbursements, why might not three or four courts lay hands contemporaneously on the subject? In this case, the assumption of jurisdiction by the Reno county district court, if properly exercised, nullifies to a certain extent the work of court, counsel and litigants in the Shawnee county district court, and would or might measurably limit the jurisdiction of this court to review the judgment of that court. Moreover, with just as tenable ground as that of the Reno county district court, the district courts of Harvey county and of Sedgwick county, where the other chapters of this gas rate controversy had their inception, might similarly take jurisdiction of the complex tissue of facts underlying this gas rate structure and reach conclusions conflicting with those of the Reno county district court. Time was when such unseemly conflicts of jurisdiction occurred. But the good sense of the judiciary has relegated such conditions to the limbo of antiquity.

In *Ewing v. Mallison,* 65 Kan. 484, 488, 70 Pac. 369, it was said:

"It is a principle of universal application, essential to the orderly administration of justice, in order to avoid conflict between tribunals of coequal authority, that the court first acquiring jurisdiction shall be allowed to pursue it to the end, to the exclusion of others; and that it will not permit its jurisdiction to be impaired or subverted by a resort to some other tribunal."

In *Juhlin v. Hutchings,* 90 Kan. 618, 135 Pac. 587, it was said:

"In such case the general rule is, as between courts of concurrent jurisdiction, that the court first acquiring jurisdiction may draw to itself all the issues between the parties which fairly inhere in the action before it, and may enjoin other courts from interfering therewith during the pendency of the action." (Syl. ¶ 4.)

In 15 C. J. 1134, 1138, it is said:

"Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coördinate power is at liberty to interfere with its action. This rule rests upon comity and the necessity of

avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results.

"In order that the rule may be applicable, the action should be between the same parties, seeking on the one hand, and opposing on the other, the same remedy, and should relate to the same question. It is also necessary that the court first obtaining jurisdiction should be in a position to determine the whole controversy and to settle all the rights of the parties."

The Shawnee county district court having first acquired jurisdiction was in a position—and with all the facts at hand—to restrain the exaction of excessive rates by the Hutchinson Gas Company in the interim when it is privileged to collect gas rates of its own making. And if the technical point be raised that the Shawnee county lawsuit was between the Hutchinson Gas Company and the public service commission while this lawsuit is between the city of Hutchinson and the Hutchinson Gas Company, a rigid adherence to that sort of technicality would summarily turn this plaintiff entirely out of court, for its petition does not even allege that it is a customer of the gas company, and except as authorized by statute to prosecute complaints against utilities before the public service commission, with the implied authority to resort to the courts to enforce or correct whatever orders the commission may issue, the city does not possess the power to institute litigation over these rates. The power and duty to protect the public in the matter of such rates are vested in the commission, not in the city, as was pointed out in the Winfield case, *supra*.

It may also be suggested that the litigation in the Shawnee county district court had terminated before this action was begun, but it was only conditionally terminated. By appeal jurisdiction of the cause and all its incidents passed to this court, where it may be affirmed, reversed, modified, or remanded for further proceedings. Furthermore, and this point should not be lost sight of, the utilities act does not contemplate that utility rate regulation shall be a matter of justiciable concern until the rates have been filed and approved, disapproved, or altered by the public service commission (or by the city government serving as a rate-making body for a one-city utility under R. S. 66-104), and judicial countenance of litigation over utilities' rates is predicated on the assumption that the rate-making body has had a fair opportunity to consider, approve, or disapprove those rates antecedent to the litigation. And the right of the utility

to exact *ad interim* rates is merely an incidental consequence pertaining to that litigation, in no wise dependent on the forbearance of some other court to interfere therewith by new and independent litigation. Apparently it was the same court in New York which enjoined the statutory gas rates which thereafter enjoined the *ad interim* excessive rates self-made by the gas company. (*City of New York v. Bronx Gas & Electric Co.*, supra.) According to our procedural methods, any complaint against the excessive *ad interim* rates should have been brought in the court whose rulings had rendered possible the making of those rates, which was, of course, the Shawnee county district court.

To conclude: When a gas rate prescribed by official authority has been set aside as noncompensatory by a court of competent jurisdiction the utility company may prescribe and collect reasonable rates of its own making until other lawful rates are promulgated by official authority; and the *ad interim* rates prescribed by the utility company cannot be summarily enjoined by another district court in independent proceedings, although by proper ancillary proceedings the court which enjoined the officially prescribed rates as being too low may similarly enjoin the *ad interim* rates prescribed by the utility company if they are shown to be excessively high. Whether the supreme court could enjoin excessive *ad interim* rates as an incident to its appellate jurisdiction, pending its determination of the cause appealed or until the public service commission had an opportunity to pass on the *ad interim* rates, is a question which must be deferred until a proper case of that sort is presented.

The judgment of the district court is reversed and the cause remanded, with instructions to sustain defendant's motion to dismiss the action.