No. 32,216

The Holton Creamery Company, *Appellee,* v. G. H. Brown, as Mayor, Charles Bateman and Ross Francis, as Commissioners of the City of Holton, *Appellants.*

(44 P. 2d 262)

 Opinion filed
May 4, 1935. 

*Albert M. Cole,* city attorney, for the appellants.

*M. A. Bender,* of Holton, and *Edward Rooney,* of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action by a user of electricity against the producer and seller to recover some portion of payments, previously made, on the ground the rates charged were excessive. There was a trial by a jury, which answered special questions and returned a verdict for plaintiff for $2,000, on which judgment was rendered. Defendants have appealed.

Since 1920 the city of Holton has owned and operated an electric power and light plant and distributing system and has been manufacturing electric energy and selling it to users thereof within and near the city. The plaintiff creamery company is one of the large users of electric energy, which it purchases from the city. The rate charged by the city and paid by plaintiff was determined by city ordinance. These rates were changed by new ordinances enacted from time to time. In 1920 the rate in excess of 1,000 kilowatts was 6½ cents per kilowatt. In 1922 this was changed to 5 cents, in 1927 to 3½ cents, in 1930 to 3 cents, and in 1932 to 2 cents. Each month the city presented the plaintiff a bill for electric energy consumed by it, computed under the ordinance then in force. Plaintiff paid these bills as presented, except a few times when payments were delayed.

In December, 1931, plaintiff sued to enjoin the city from cutting off its current for nonpayment of its bills, alleging the rates charged were high, oppressive and confiscatory; that it was unable to pay the rates and compete with other concerns engaged in the same business, and notwithstanding this the city threatened to and would cut off the current, to plaintiff's irreparable loss, for which it had no adequate remedy at law. The city filed a general demurrer to plaintiff's petition. This was sustained by the trial court, and plaintiff appealed. Our decision was handed down in April, 1933 (*Holton Creamery Co. v. Brown,* 137 Kan. 418, 20 P. 2d 503). The city, by

its demurrer and for the purpose of a ruling thereon, admitted its rates were high, oppressive and confiscatory. That question was not before the court for decision. The question presented was whether the plaintiff's grievances were redressable by the city, as contended by plaintiff, or through the public service commission, as contended by the city. This court held in accord with plaintiff's view and reversed the trial court and remanded the cause for further proceedings. We were told on the oral argument on the present appeal that soon after our prior decision a new ordinance was enacted by the city establishing a lower rate. However, we are not concerned on this appeal with any question involving the present rate.

After the cause was remanded for further proceedings, by leave of court plaintiff filed an amended petition in which it denominated its original petition as its first cause of action and added a new second cause of action in which it sought to recover from the city a money judgment in the sum of $15,000. Plaintiff's rights to recover such a judgment were predicated upon allegations to this effect: That since 1921 plaintiff has purchased electric energy from the city; that under the laws applicable thereto the city, on plaintiff's application therefor which it made, was under the duty of furnishing plaintiff electric energy at a reasonable rate; that there was an implied agreement the same would be furnished at a reasonable rate, the same being the legal and lawful rate; and, notwithstanding this, defendant charged and collected from plaintiff illegal, excessive, exorbitant and confiscatory rates, which plaintiff paid under protest, to plaintiff's damage in the sum named. The trial from which this appeal is taken was upon this new second cause of action.

Defendant's answer alleged the court had no jurisdiction of the subject matter, denied that its rates charged were unreasonable, that plaintiff had made any payments under protest, and that it had been damaged in any sum.

The evidence presented was of the character ordinarily presented to a public service commission, or similar body, on a hearing to fix reasonable rates of a public utility; the instructions of the court embodied rules of law proper for such a commission to consider in determining a reasonable rate, and the special questions submitted to the jury related to those matters. There was no special finding that any rate charged at any specific time was unreasonable; but from the general verdict we may presume the jury concluded that

rates charged at some time, or all the time, in the twelve years covered by the inquiry were unreasonable in the aggregate to the amount of $2,000. The jury found some payments were made under protest, but could fix no date or amount of such payments.

Appellants argue several questions. It will be necessary to decide but one of them, namely: Did the court have jurisdiction of the subject matter of this action? They argue:

"The court only has jurisdiction to determine the reasonableness or unreasonableness of a rate. It cannot fix the amount of the rate. Therefore, until a proper rate-making body has fixed a reasonable rate, no action can be brought to recover for alleged overcharges."

Is this argument sound? If so, plaintiff could not recover any sum, for there is no contention by plaintiff that a rate-making body, which for this case is the governing body of the city, had fixed a rate less than the amount plaintiff paid. The point was raised in this case not only in the answer but by demurrer to plaintiff's evidence, and by motion for judgment for the city notwithstanding the general verdict.

It is clear, of course, that before the trial court in this case could render any money judgment for plaintiff it in effect would have to fix a rate for a time plaintiff was furnished electric energy by defendants and then determine how much, if any, plaintiff had paid in excess of that rate. Since a public utility, such as the one here in question, is impressed with the public interest, the state has the general power to regulate the utility and to fix its rates charged to consumers, subject always to the requirement that the rates so fixed shall be reasonable. The state does this through the legislative branch of its government. This power of the state to fix rates is not a judicial function, but is a legislative one. (51 C. J. 12.) Treating that question in *State, ex rel., v. Flannelly,* 96 Kan. 372, 152 Pac. 22, this court said:

"Who has the power to fix the rates at which natural gas shall be sold by the receivers of the Kansas Natural Gas Company, the public utilities commission, or the court appointing the receivers? The legislature has said that the public utilities commission shall fix these rates. The courts have repeatedly declared that the courts cannot fix rates, and that fixing rates is a legislative function. When rates are fixed the courts can ascertain whether or not they are in violation of law or of some constitutional provision. But courts have not the authority to determine what rates will be reasonable, just, compensatory, or legal, and then put in effect those rates. The commission cannot finally determine what rates will be legal and will not violate constitutional

provisions. The commission is the body authorized by law to say in the first instance what rates are legal and will not violate constitutional provisions, but the courts must finally say whether or not the rates fixed are illegal or do violate such provisions. The one function is legislative, while the other is judicial. The commission cannot invade the field occupied by the court; neither can the court invade the field occupied by the commission. The commission must act first, and the courts afterward." (p. 382.)

This doctrine so well stated has been consistently followed in this state, as shown by the following list of cases dealing with the question, and some of them reannouncing the doctrine: *State, ex rel., v. Gas Co.*, 88 Kan. 165, 127 Pac. 639; *Telephone Co. v. Utilities Commission*, 97 Kan. 136, 154 Pac. 262; *State v. Gas Co.*, 102 Kan. 712, 172 Pac. 713; *City of Hutchinson v. Bell Telephone Co.*, 109 Kan. 545, 550, 200 Pac. 301; *City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, 207 Pac. 813; *Railroad and Light Co. v. Court of Industrial Relations*, 113 Kan. 217, 214 Pac. 797; *State, ex rel., v. Telephone Co.*, 115 Kan. 236, 223 Pac. 771; *Gas & Fuel Co. v. Public Utilities Commission*, 116 Kan. 165, 225 Pac. 1036; *Consolidated Flour Mills Co. v. United Water, Gas and Electric Co.*, 119 Kan. 47, 237 Pac. 1037; *City of Hutchinson v. Hutchinson Gas Co.*, 125 Kan. 346, 355, 264 Pac. 68; *City of Wichita v. Wichita Motor Bus Co.*, 126 Kan. 677, 271 Pac. 403; *Atchison, T. & S. F. Rly. Co. v. Public Service Commission*, 130 Kan. 478, 287 Pac. 608; *Atchison, T. & S. F. Rly. Co. v. Public Service Comm.*, 130 Kan. 777, 288 Pac. 755; *Wichita Gas Co. v. Public Service Com.*, 132 Kan. 459, 295 Pac. 668.

It follows, therefore, that the trial court had no jurisdiction of the subject matter presented to it in this action.

Plaintiff has proceeded as though there existed a reparation statute applicable to such rates, such as the one applicable to common carriers before this court in *State, ex rel., v. Public Service Comm.*, 135 Kan. 491, 11 P. 2d 999, and that it had taken the proper steps before the rate-making body, namely, the governing body of the city, and had there had it determined that a certain portion of the payments previously made by plaintiff had been unlawfully exacted. We are cited to no such statute relating to a public utility, and if one existed no contention is made that plaintiff took the preliminary steps to bring itself within such a statute.

The result is, the judgment of the court below must be reversed with directions to enter judgment for defendants. It is so ordered.