No. 27,970.

THE CITY OF WICHITA, *Appellant,* v. L. T. HUSSEY et al., *Appellees;*
THE WICHITA MOTOR BUS COMPANY, *Intervener.*

(271 Pac. 403.)

Opinion filed November 3, 1928.

*A. V. Roberts, Vincent F. Hiebsch* and *Roger P. Almond,* all of Wichita, for the appellant.

*M. J. Healy, John M. Kinkel* and *C. B. Randall,* all of Topeka, for the appellees.

*Thomas F. Doran, Clayton E. Kline,* both of Topeka, *Robert C. Foulston, George Siefkin,* both of Wichita, and *Henry I. Green,* of Urbana, Ill., for the intervener.

The opinion of the court was delivered by

DAWSON, J.: The city of Wichita brought this action in the district court of Shawnee county against the public service commission to enjoin and set aside an order of that official body prescribing rates for the transportation of passengers on motor busses operating in Wichita and vicinity.

The order of the commission was made on the applications of two bus operators in Wichita upon a showing that the five-cent fare

they were permitted to charge was insufficient to earn a reasonable return on their respective investments and to furnish proper equipment and provide efficient service. The city of Wichita contested the proposed advance in rates before the commission; a number of other bus operators participated in the hearings, as well as the managing officers of a bus line operated by the local street-car company; and it was understood by the commission and by all concerned that if a substantial increase in rates were sanctioned a new motor bus company would be organized consolidating all the existing lines and make the necessary investment and expenditures to give the Wichita public an efficient motor omnibus transportation system.

The order of the commission gave authority to the bus operators to advance their five-cent rates to the following schedule:

| | |
|---|---:|
| Single fare | $0.08 |
| Two tokens | .15 |
| Tickets, five rides—sold only at office of applicant and other convenient places designated by applicant.... | .35 |
| Tickets, twenty-four rides—sold only at office of applicant and other convenient places designated by applicant | 1.50 |

Following the order increasing the rates, the Wichita Motor Bus Company was organized, and by various negotiations it bought out the several independent and competing lines, and set about the business of systematizing and improving the service and equipment.

The city brought this action to test the validity of the order on the alleged ground that the rates authorized by the commission were excessive and unreasonable. The public service commission joined issue. The Wichita Motor Bus Company was permitted to intervene. Its contentions were that even the new rates were inadequate, and that the city of Wichita was not a patron of the bus lines and had no financial or other concern with the bus rates sufficient to justify it to maintain the action.

After a full hearing the trial court made certain findings and conclusions, which in part read:

"1. The court is not disposed to hold that the city of Wichita has no standing to maintain this action. . . .

"2. . . . The cross-petition of the intervener will be denied for the reason that the commission fixed the rates asked for by the predecessors of the intervener, and for the further reason that the rates are, in a measure experimental for reasons that will be stated later in this memorandum, and it can-

not well be determined at the present time that the rates are not sufficient. On the contrary, I am inclined to think that they will be found to be adequate.

"3. On the issues made in this case, and under the evidence, a peculiar situation is presented, unlike that usually arising in a rate case. The rates fixed by the commission are, to some extent, conditional. It appears and the rates were allowed largely on condition that the intervener was to spend $120,000 for fifteen new motor busses, and build a bus garage to cost, with the site and equipment, nearly $150,000. The investment for these purposes would constitute nearly half of what is included in the assets making up the rate base. If these expenditures are not made, a different question would be presented, but the court would have no right to assume at this time that the representations made to the commission in this behalf were not in good faith or that they will not be substantially carried out. On the assumption that these expenditures are to be made, the court is not able to find that the rates fixed are unlawful, unreasonable or excessive.

"It must be true that the bus business is, to some extent, in an experimental stage. So far as experience has gone in other localities, it appears from the evidence of John L. Fennell before the commission, the record of which was introduced in this case, that the average fare charged in railway operation of motor busses is 8.9 cents. The rate in Kansas City is 10 cents. While rates in other cities where conditions may be different do not set a standard here, they are informing.

"In my opinion, the returns of the bus company for the first three months of 1927 do not furnish a fair standard to measure future receipts by. Doubtless the increased fare has reduced the number of actual passengers, and the transfer system is also responsible for a falling off in the revenue. It seems probable that as soon as the business is better established, and the riding public becomes more accustomed to the new rates, a better showing will be made. The evidence given on behalf of the bus company is to the effect that the falling off because of increased fares should be about nine per cent, and that from the change in the transfer system about ten per cent. The nine per cent decrease in passengers carried, where the increase in rates is as much as in this case, about fifty per cent, would not, in my judgment, be a sufficient allowance, especially where a competing electric line carries passengers for six cents. The falling off of traffic would depend quite largely on the extent of the increase in fare. For example, an increase of 100 per cent might drive away a large part of the traffic, especially where there was a competing transportation system which was available. The decrease in business done by the motor bus company during the first three months of 1927 is perhaps the strongest point in favor of the position of the plaintiff in this case. However, under all the evidence, it does not seem to me that a maximum fare of 8 cents, with three options to buy tokens at lesser rates, the minimum being 24 tokens for $1.50, or 6¼ cents each, should be held to be unreasonable or excessive at the present time."

Judgment was accordingly entered for plaintiff, and the city appeals, urging, in effect, that the trial court should have found that the

rates authorized by the commission were excessive and unreasonable. In its argument in support of this contention, counsel for the city seem to shut their eyes to the limitations of an appellate review, the most elementary of which is that the supreme court cannot serve as a fact-finding tribunal. This elementary rule not only applies in ordinary litigation between private parties but to controversies over utility rate cases as well. Thus in *State, ex rel., v. Telephone Co.,* 115 Kan. 236, 223 Pac. 771, where a schedule of telephone rates promulgated by the public utilities commission had been enjoined by the district court after a lengthy hearing before a referee, the cause was brought to this court for review, and we were constrained to say:

"The public utilities commission argues that this court is not bound by the facts found by the trial court, but may examine the evidence to determine the weight and sufficiency thereof and find other facts different from those found by the trial court, as this court may conclude are established by the evidence. The argument of the commission is that this is a suit in equity, and that in suits in equity the appellate court examines the evidence the same as the trial court. The rule that the verdict of the jury or the findings of fact made by a referee in the district court, when approved by that court, will not be disturbed in the supreme court where the verdict or findings are supported by evidence, has been followed during the whole of the history of this state. Probably that rule has been followed five hundred times. It has been followed in equity cases as well as in law cases. . . .

"We are, in effect, asked to try this case *de novo*. Under the constitution, the jurisdiction of this court is appellate only, except in three specific instances. That jurisdiction cannot be extended so as to make this court try appealed cases *de novo*." (pp. 269, 270.)

Again, in *Agricultural Ins. Co. v. Ætna Ins. Co.,* 119 Kan. 452, 239 Pac. 974, the rivalries of two powerful groups of fire insurance corporations gave rise to protracted litigation in the district court and eventually came to the supreme court on appeal. Notwithstanding the constitutional limitations of this court's appellate jurisdiction we were asked to substitute our judgment for that of the trial court on a lengthy record covering a multitude of matters of disputed fact, supported and controverted by the testimony of witnesses who had appeared before the trial court but whom we had never seen and whose veracity and knowledge we had no means of testing. This court was asked to accord its own credence to the testimony, "and from a review of all the evidence, direct judgment for plaintiffs." In restating the age-old rule that it was the exclusive function of the trial court to weigh the evidence and find the facts, Mr. Justice

Burch, speaking for the court, cited and quoted from cases covering the entire history of the supreme court from *Major v. Major and others,* 2 Kan. 337, 339, down to *State v. Rieman,* 118 Kan. 784, 785, 236 Pac. 641, all holding to the same effect that—

" 'The district court is the fact-finding tribunal. Authority of this court is limited to correction of error, and it may not, in case of doubt, declare error in a conclusion of fact unless it has facilities for determining the fact which are equal to those possessed by the district court.' (*State v. Rieman,* 118 Kan. 784, 785, 236 Pac. 641.)" (p. 459.)

Within the foregoing rule of appellate review, what is there for this court to decide in the instant case? The trial court held that the city of Wichita did have a right to maintain the action. Its petition did not allege any specific interest in the bus rates, but in the evidence it casually developed that some of its employees used the busses at its expense. But the public utilities act gives "any body politic or municipal organization" a right to complain to the public service commission about utility rates and to be heard before that tribunal when such rates are under consideration, and also · to invoke a judicial review of the orders of the commission concerning them. (R. S. 66-111; 66-118; *Kansas Gas & Electric Co. v. Public Service Com.,* 122 Kan. 462, 464, 251 Pac. 1097.) Probably the statute does not mean that *any* municipal corporation—say Hiawatha, Beloit or St. Francis—could complain of bus rates in Wichita or precipitate litigation pertaining thereto; but apparently the legislative theory was that a municipality is a sort of local *parens patriæ* and should have the right to participate in all deliberations where utility rates are to be regulated where its particular community is likely to be affected, although the rates are not so exclusively local that the city itself could dictate them under R. S. 66-104. This view takes nothing from the rule repeatedly announced by this court that a city has no inherent right to provoke litigation over public utility rates until such relief as the public utilities act can furnish has first been invoked. (*City of Parsons v. Water Supply and Power Co.,* 104 Kan. 294, syl. ¶ 3, 178 Pac. 438; *Kansas Gas & Electric Co. v. Public Service Com.,* 122 Kan. 462, 251 Pac. 1097; *City of Hutchinson v. Hutchinson Gas Co.,* 125 Kan. 346, 350, 358, 264 Pac. 68.) But here the city took the proper course throughout; it contested the proposed rate advances before the public service commission; and being dissatisfied with the order of that tribunal, it brought an action thereon as authorized by R. S. 66-118. This court holds that the

city of Wichita was a proper party to participate in such rate-regulating proceeding before the public service commission and a proper party to bring a timely action invoking a judicial review of the orders of the commission pertaining thereto.

Turning then to the narrow limits of the present appeal, our difficulty is to discover anything that savors of error or irregularity in the judgment of the trial court. Counsel for the city propound these questions:

"First: What was the fair value of the, property upon which the intervener is entitled to earn a fair return?

"Second: What rate would produce a fair return?"

But unless those questions were fairly raised for determination in the trial court they are not properly reviewable here. The trial court made no finding of the fair value of the property of the Motor Bus Company, and in the nature of things that was not a fair determinant in this case. The motor bus business in Wichita was a new business. It was not systematically organized. A half a dozen independent business concerns had tried unsuccessfully to make a living at the business on a five-cent fare. The service was poor; the busses were poor, and the operating employees were not uniformed and were poorly paid. And it was in the belief that if higher rates were granted, and the business lines unified and systematized, and sufficient new capital invested, an efficient, up-to-date system of omnibus transportation could be installed to articulate with the street railway system which would give the town the sort of service it should have. The trial court found that the rates authorized by the commission were experimental. There were incontrovertible facts to support that finding. The trial court found that the financial results of three months' experimenting with the newly authorized rates were insufficient to furnish a fair standard by which to measure future receipts of the bus line. It is not possible to overthrow that conclusion. (*Railroad and Light Co. v. Court of Industrial Relations*, 113 Kan. 217, 223, 210 Pac. 475.) Indeed, all the facts and circumstances presented to the trial court would hardly justify any other conclusion.

The judgment is affirmed.